**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 15-03429-HB |
| Ryan Michael Bycura and Sherri Ann Bycura, | Chapter 13 |
| Debtor(s). | **ORDER** |

**THIS MATTER** came before the Court to consider confirmation of the proposed plan filed by Debtors Ryan Michael Bycura and Sherri Ann Bycura, and for a hearing on the Bycuras' Objection to the Claim of Founders Federal Credit Union ("Founders"), Founders' Objection to the Homestead Exemption, and Founders' Motion for Relief from the Automatic Stay. The Court enters the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a)(1), made applicable to these contested matters pursuant to Fed. R. Bankr. P. 7052 and 9014.

### FINDINGS OF FACT

1. In 2004, the Bycuras purchased a house and land located at 2900 Neely Store Road, Rock Hill, York County, South Carolina for $150,000. This purchase was financed by a loan from Founders secured by the property. At the time of purchase, the property included 14 acres and a house.

2. In 2005 and 2006, Founders refinanced the loan for the Bycuras, granting a mortgage on the 14 acres. Each time, the Bycuras received a cash distribution.

3. Beginning in 2006, Mr. Bycura worked for Founders for approximately four years as a teller and a loan processor, and became very familiar with personal and auto loans. He did not work in the mortgage loan department.

4. From the date of purchase to the date of the hearing, the Bycura family, which currently includes three children, has lived in the house located on a portion of the 14 acres. The residence, built around 1955, is approximately 900 square feet with two bedrooms and one bathroom and was renovated by the Bycuras.

5. The Bycuras decided to build a larger house on the 14 acres and intended to move there upon completion. When Mr. Bycura sought permits to begin construction, he understood from York County officials that the 14 acres would need to be divided.

6. A plat titled "Property Surveyed for Ryan M. Bycura and Sherri A. Bycura," dated July 10, 2006, indicates a 1.081 acre tract (the "1 acre") carved out of the 14 acres.[1]

7. Although the Bycuras' current residence is located on the remaining property ("13 acres"), its driveway and well are on the 1 acre. Mr. Bycura testified that he intended for the well to provide water for the current residence located on the 13 acres and the house to be built on the 1 acre.

8. Mr. Bycura testified that he notified Founders of his intentions and Founders' employees informed him that in order to build the house, he would need to have an appraisal conducted and refinance the loan, with the 1 acre excluded because the value of the 13 acres would be sufficient to secure the loan.

9. Ken Kessaris conducted an appraisal of the 13 acres dated January 29, 2008, and provided a copy to Founders. The appraisal states that the "[e]xisting tract is 14 acres. 1 acre is to be cut off leaving 13 acres to be appraised in this report (See plat)." The appraisal further states "[f]or purposes of this appraisal 1 acre and home is to be appraised separately from the remaining 12 acres. The 12 acres will be given a value and added back

---

[1] The plat, recorded later, indicates it was "approved for recording" by the Clerk of Court of York County on July 28, 2006.

to home and 1 acre." According to this methodology, the appraiser valued the 13 acres at $258,000.[2]

10.  Attorney Tracey H. Reynolds was given instruction for the closing of a $255,000 loan from Founders to the Bycuras. The Closing Instructions sent to the attorney, completed by one of Founders' loan processors and dated February 21, 2008, state that the legal description of the property securing the loan is "Parcel # 772000005 Deed BK6305 pg 115 14 acres."

11.  On March 3, 2008, Ms. Reynolds e-mailed Denise Shepherd and Debra Bailey, Founders' mortgage processors, referencing the Bycuras' refinance, to clarify the property description. Ms. Reynolds stated "[p]lease note as I discussed with Debra, Bycura is the 14 acres minus the 1.081 parcel. Let me know if this is not correct." Ms. Bailey responded by e-mail regarding other matters, but the record does not indicate that either she or Ms. Shepherd ever stated that this description was incorrect and did not reference the property description in any regard.

12.  On or about March 5, 2008, the Bycuras executed an Adjustable Rate Note in the amount of $255,000 payable to the order of Founders. The note was a renewal and refinance of the existing indebtedness. The note states that it is secured by "2900 Neely Store Road, Rock Hill, SC 29730," identifying the property by address only.

13.  The Bycuras also executed a mortgage granting Founders a lien on real property located at "2900 Neely Store Road" and more particularly described therein as follows:

> All that certain piece, parcel or lot of land with all improvements thereon, lying being and situate in County of York, State of South Carolina, and being

---

[2] The appraiser concluded that the 12 acres of land had a value of $168,000 and the acre where the residence is located had a value of $90,000, for a total value of $258,000.

3

> shown and designated as Tract 1, John Simpson Estate, containing 14.00 acres, more or less, on plat entitled "Record Plat – 17.46 acres, Tracts 1 and 2 of the John Simpson Estate" prepared by Stikeleather & Associates, LLC, dated May 10, 2004, and recorded in the Office of the Clerk of Court for York County, South Carolina in Plat Book 141, Page 514, and having such metes and bounds, courses and distances as reference to said plat will more fully appear.
>
> **Less and except 1.081 acre as shown on plat entitled "Property Surveyed for Ryan M. Bycura and Sherri A. Bycura" preapred [sic] by Fisher-Sherer Inc. dated July 10, 2006, and recorded in the Office of the Clerk fo [sic] Court for York County, South Carolina in Plat Book D302, Page 6.**
>
> [D]ERIVATION: This being the identical property conveyed to Ryan M. Bycura and Sherri A. Bycura by deed of William Robinson Simpson, III, dated May 20, 2004, and recorded June 3, 2004, in the office of the Clerk of Court for York County, South Carolina in Record Book 6305, Page 115.

(emphasis added).

14. The recorded plat for the 1 acre excluded from the March 5, 2008 mortgage was not actually recorded until March 14, 2008, in Plat Book D302, Page 6. The record contains no explanation for the reference in the mortgage to a recorded book and page number that did not exist until nine days later.

15. The mortgage was recorded on March 24, 2008, in the Office of the Clerk of Court for York County in Mortgage Book 09888, Page 121.

16. Mr. Bycura testified that he understood the 1 acre was to be excluded from the March 2008 mortgage as the documents indicate.

17. The HUD Settlement Statement from the March 5, 2008 refinance indicates that the Bycuras received a cash disbursement of $15,581.05 from the proceeds of the loan.

18. John Seabolt, Assistant Vice President of Recovery Services at Founders, testified. Mr. Seabolt did not have any personal involvement with the 2008 refinance and stated that he based his testimony upon a review of records and documents created by

4

Founders in the normal course of business, including conversation logs, notes, and documents contained in Founders' file for the Bycuras. Mr. Seabolt testified that the lender understood the cash disbursement of $15,581.05 was to be applied by the Bycuras to the new house construction. Mr. Seabolt testified that it was Founders' understanding that the Bycuras used cash disbursements from the prior refinances for the same reason.

19. At some point in time, which is not clear from the record, the Bycuras began construction of a new house on the 1 acre, while continuing to live in the residence located on the 13 acres.

20. Founders introduced a current tax valuation for the 1 acre and improvements, which indicates that the 1 acre maintained the street address of 2900 Neely Store Road and was assigned TMS 772-00-00-037, and the 13 acres was given the street address 2916 Neely Store Road and maintained the TMS 772-00-00-005. It is not clear from the record when the additional street address and tax map sequence number were assigned.

21. The York County Tax Assessor taxes the 13 acres at the 4% rate used for primary residences and the 1 acre at the 6% rate used for investment properties and non-primary residences.

22. Before the new house was completed, the Bycuras fell behind on their monthly payments to Founders.

23. On June 21, 2013, Founders filed an action against the Bycuras in the York County Circuit Court.[3] In addition to a judgment on the note and foreclosure of the mortgage on the 13 acres, Founders asserted additional causes of action seeking

---

[3] *Founders Fed. Credit Union v. Bycura*, 2013-CP-46-01923.

5

reformation of the mortgage, a declaratory judgment that the mortgage is a valid and enforceable mortgage lien against the 1 acre as well, and relief due to unjust enrichment/equitable lien.

24.     The state court complaint alleges that the legal description in the mortgage erroneously excludes the 1 acre and the exclusion is contrary to the parties' intent.  The Bycuras filed an answer disputing these claims.

25.     During the state court action, Founders was granted partial summary judgment with respect to the indebtedness due pursuant to the note, which resulted in entry of a judgment on November 20, 2014, in the amount of $260,502.09.  Upon recording, the judgment lien encumbered the 1 acre.  That judgment lien did not include any amount for attorneys' fees and reserved such issues for future determination.

26.     On June 30, 2015, the Bycuras filed a voluntary petition for relief under Chapter 13.  At the time the case was filed, the state court action was stayed, including any issues regarding the 1 acre.

27.     The Bycuras' schedules list the 1 acre as an unencumbered property that is used as part of their residence along with the 13 acres.  The schedules indicate that Founders has a mortgage lien on the 13 acres, but fail to include any mention of a judgment lien.

28.     Mr. Bycura testified that he was not aware of the judgment lien until shortly before the hearing on these matters.

29.     The Bycuras claim a homestead exemption in the amount of $100,000 applied to the 14 acres as a whole.

30.     Construction of the new house is now approximately 75% complete. The house is 3,570 square feet with four bedrooms. The plumbing has been roughed-in, but is not completed, and the HVAC system was recently completed to maintain the status of the building permit.

31.     Currently, the unfinished house is used for storage. Photographs show a grill in the backyard and children's toys on the back porch. The aerial view below, which outlines the 1 acre, indicates that the unfinished house is located approximately fifty feet away from the house on the 13 acres.[4]



32.     The Bycuras' Chapter 13 plan proposes payments to cure the arrearage on Founders' note and mortgage. The plan does not address the judgment lien.

---

[4] Creditor's Ex. C.

7

33. The Bycuras' schedules and the testimony indicate that their monthly income is insufficient to fund the plan as currently proposed.

34. The Bycuras have not made the three post-petition mortgage payments due directly to Founders as of the date of the hearing and, therefore, have failed to comply with the requirements of their proposed plan. Mr. Bycura testified that when he attempted to make the first of these payments at the drive-thru window of a Founders branch, he was informed he needed to speak with the loan department. Mr. Bycura has not attempted to make the subsequent two payments and does not currently have the funds to do so.

35. On August 5, 2015, Founders filed a proof of claim in the amount of $300,477.31, asserting a mortgage on and security interest in the entire 14 acres.

36. An arrearage statement attached to Founders' claim asserts that the Bycuras are $75,906.26 in arrears on the note. This amount is itemized as follows:

- $7,040.60 for 5 missed payments of $1,408.12 each;
- $35,602.84 for 28 missed payments of $1,271.53 each;
- $1,550.00 for 31 late charges of $50.00 each; and
- $31,712.82 for legal fees and foreclosure fees and costs (collectively, the "attorneys' fees and costs").

Excluding the attorneys' fees and costs, the arrearage amount is $44,193.44.

37. Section 7 of the note, titled "Borrower's Failure to Pay As Required" provides:

> If [Founders] has required [the Bycuras] to pay immediately in full as described above, [Founders] will have the right to be paid back by [the Bycuras] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

38. Section 9 of the mortgage, titled "Protection of Lender's Interest in the Property and Rights Under this Security Instrument" provides that if:

8

> there is a legal proceeding that might significantly affect [Founders'] interest in the Property and/or rights under this Security Instrument . . . then [Founders] may do and pay for whatever is reasonable or appropriate to protect [Founders'] interest in the Property and rights under this Security Instrument . . . . [Founders'] actions can include, but are not limited to . . . appearing in court; and . . . paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument . . . .

39. The mortgage also provides that any amounts disbursed by Founders under Section 9 shall become additional debt of the Bycuras secured by the mortgage.

40. Whitney Floyd, Bankruptcy Coordinator for Founders, testified that the majority of the attorneys' fees and costs are related to the state court action. She stated that in her experience, Founders usually incurs $5,000 to $6,000 in legal fees and costs for routine, uncontested foreclosure actions.

41. Founders did not provide any detail of the attorneys' fees and costs actually incurred or paid during the state court action or in this bankruptcy case.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (G), (K), and (L) and this Court may enter a final order.

## DISCUSSION AND CONCLUSIONS OF LAW

### I. OBJECTION TO THE HOMESTEAD EXEMPTION

The Bycuras claim a homestead exemption under S.C. Code Ann. § 15-41-30(A)(1) in the 14 acres as a whole. The Chapter 13 Trustee did not object. Founders objected, arguing that this exemption is impermissible because the Bycuras reside only in the residence on the 13 acres and the house located on the 1 acre is uninhabitable.

Section 522(b) provides that debtors can choose to exempt from property of the bankruptcy estate that property which is exempt under the applicable state or federal law.

9

South Carolina has opted out of the federal exemptions. 11 U.S.C. § 522(b)(2). Under South Carolina law, a debtor may "exempt from attachment, levy, and sale under any mesne or final process issued by a court or bankruptcy proceeding . . . [t]he debtor's aggregate interest, not to exceed fifty thousand dollars in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence . . . ." S.C. Code Ann. § 15–41–30(A)(1). The statute does not define "residence." However, South Carolina case law has established that "[a] residence is defined as, '[p]lace where one actually lives or has his home; a person's dwelling place or place of habitation; an abode; house where one's home is; a dwelling house.'" *In re Jones*, 397 B.R. 765, 770–71 (Bankr. D.S.C. 2008) (quoting BLACK'S LAW DICTIONARY 1309 (7th ed. 1999)).

"The rationale for Homestead exemptions is well established: to protect from creditors a certain portion of the debtor's property, and to prevent citizens from becoming dependent on the State for support." *Holden v. Cribb*, 349 S.C. 132, 140, 561 S.E.2d 634, 639 (Ct. App. 2002) (citing *Scholtec v. Estate of Reeves*, 327 S.C. 551, 560, 490 S.E.2d 603, 607 (Ct. App. 1997)). In support of this purpose, courts are to construe the homestead exemption liberally in favor of debtors. *In re Nguyen*, 211 F.3d 105, 110 (4th Cir. 2000) ("Generally, statutes creating debtors' exemptions must be construed liberally in favor of the debtor and the exemption."); *In re Shaffer*, 78 B.R. 783, 784 (Bankr. D.S.C. 1987) (finding that "exemptions are to be construed liberally in favor of the debtor" (internal citations omitted)).

Pursuant to Fed. R. Bankr. P. 4003(c), "the objecting party has the burden of proving that the exemptions are not properly claimed."

10

In *Jones*, this Court found that the debtors were allowed to apply the homestead exemption under S.C. Code Ann. § 15-41-30(A)(1) to two parcels of property—one containing the debtors' home and the other containing the driveway. 397 B.R. at 771. The Court found that the objecting party did not meet his burden of proof and the only evidence was the debtor's testimony, which indicated that the debtors used the driveway on the contiguous property to access their home. *Id.* Similarly, in *In re Weldon*, this Court found that the debtors were entitled to claim a homestead exemption on two parcels even though the house in which the debtors resided was located on only one parcel. C/A No. No. 11-05407-jw, slip op. (Bankr. D.S.C. Dec. 7, 2011). The adjacent parcel contained the driveway the debtors used to access their home, part of their pool, and a building used by the debtors for storage. *Id.* The Court concluded that both parcels were used as the debtors' residence for purposes of S.C. Code Ann. § 15-41-30(A)(1). *Id.*

This case is similar to *Jones* and *Weldon*. There is no question that the Bycuras occupied the residence on the 13 acres from the time of purchase until the hearing date. The well for that residence is located on the adjacent 1 acre as is a portion of their driveway. The property was originally one 14 acre parcel that, as a whole, served as the Bycuras' residence and they have continued to use it in the same manner since the 1 acre plat was recorded. Although it includes an unfinished, uninhabited house, that does not negate the fact that the 1 acre is necessary to the enjoyment and use of the Bycuras' home by providing water and access. The property is also used as storage and the porch and yard are used for family recreation. The 1 acre and the 13 acres are used by the Bycuras together in a manner that is consistent with the meaning of a "residence" under S.C. Code Ann. § 15-41-30(A)(1). Construing the exemption liberally, the Court finds that Founders has not met

11

its burden under Fed. R. Bankr. P. 4003(c) and the objection to exemption is overruled. The Bycuras may claim an exemption in both the 13 acre and the 1 acre parcels.

## II.   OBJECTION TO PROOF OF CLAIM

Founders filed a claim in the amount of $300,477.31, which includes mortgage arrearages of $75,906.26. The arrearage amount consists of delinquent monthly payments, unpaid late fees, and $31,712.82 in attorneys' fees and costs. Founders asserts that its claim is secured by a mortgage lien on the entire 14 acres. The Bycuras contest the attorneys' fees and costs and the extent of the mortgage lien claimed by Founders.

The filing of a proof of claim is *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). "Once an objection is raised, the objector bears the burden of going forward to produce evidence sufficient to negate the *prima facie* validity of the filed claim." *In re Lewis*, 363 B.R. 477, 481 (Bankr. D.S.C. 2007) (citing *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173 (3d Cir. 1992)). "If the objector produces evidence sufficient to negate the validity of the claim, the ultimate burden of persuasion remains on the claimant to demonstrate by a preponderance of evidence that the claim deserves to share in the distribution of the Debtor's assets." *Id.*

### a.   ATTORNEYS' FEES AND COSTS

Founders' claim provided no detail of the significant claim for attorneys' fees and costs. A review of the state court complaint clearly indicates that the dispute between the parties was broader than a foreclosure or collection action. Analysis of the attorneys' fee provisions in the note and mortgage reveals that they are not limitless in scope. Therefore, the Bycuras' have sufficiently negated any *prima facie* validity of reasonableness and

appropriateness of the amount of attorneys' fees and costs claimed and the burden shifts to Founders.

Despite the Bycuras' challenge to the claim and proper notice of the objection and hearing, Founders failed to provide any itemization or detail concerning the attorneys' fees and costs incurred in this case.  Founders only offered estimates of usual amounts in simpler cases.  The Court is unable to determine the nature and extent of the legal services rendered in this case.  As a result, Founders has not established that its attorneys' fees and costs of $31,712.82 are reasonable or within the scope of the language found in the note or mortgage.  Accordingly, this portion of the Bycuras' objection is sustained and the $31,712.82 for attorneys' fees and costs is disallowed.

    b.  SECURITY INTEREST

Founders claims a mortgage on the entire 14 acres. The specific property description in the mortgage clearly excepts the 1 acre.  There is no evidence that the Bycuras gave or intended to pledge the 1 acre as security for the note.  There is also no evidence that the Bycuras misled Founders in any way, that there was a mutual mistake or error or unjust enrichment, or that Founders took any action to correct or alter the mortgage from the time it was executed in 2008 until 2013 after the Bycuras had defaulted.  The Bycuras have produced ample evidence to rebut the *prima facie* claim of a mortgage lien on the 1 acre, and Founders has not presented sufficient evidence or any legal theory in response to support its claim.   Therefore, the Bycuras' objection is sustained to the extent it claims that the mortgage includes or should be altered to include the 1 acre.

### III.  PLAN CONFIRMATION

The Chapter 13 Trustee argues the Bycuras' proposed plan is not feasible and cannot be confirmed pursuant to 11 U.S.C. § 1325(a)(6).  Founders also objects to the feasibility of the plan and the provisions regarding payment of its claim.  The proposed plan does not address the judgment lien.  A review of the testimony, the budget filed by the Bycuras, and the proposed plan clearly indicate that the Bycuras cannot afford to maintain current payments on the mortgage, cure the arrearage—even in the absence of the claimed attorneys' fees and costs—and comply with the plan.  Therefore, the Bycuras have failed to meet their burden of proof and confirmation of the plan is denied.

### IV.  RELIEF FROM STAY

It is undisputed that Founders has a valid mortgage lien on the 13 acres and the Bycuras are in arrears on their pre- and post-petition mortgage payments.  Additionally, the Bycuras have insufficient income to make the regularly scheduled payments and cure the arrearage, even after deducting the claimed attorneys' fees and costs.  At the hearing, no feasible plan to retain this property was evident, and the Bycuras' counsel advised that, out of necessity, they likely will amend their plan to surrender the 13 acres.  On these facts, sufficient cause exists to lift the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (2) to allow Founders to proceed with its state law collection rights regarding this property.

Founders does not, however, have a mortgage lien on the 1 acre and the Bycuras claim an exemption in that property.  Founders does have a judgment lien on the 1 acre.  The Bycuras have not initiated any action to attempt to value or avoid the judgment lien and at the hearing, the parties reserved the issue of the value of the property.[5]  Founders

---

[5] Evidence in this record indicates that the value may exceed the amount of the Bycuras' homestead exemption.

has not shown sufficient cause for relief at this time regarding the 1 acre and it remains protected by the automatic stay of 11 U.S.C. § 362(a).

**IT IS, THEREFORE, ORDERED THAT:**

1. Founders' Objection to the Homestead Exemption is overruled and the Bycuras may claim an exemption in the 13 acre and the 1 acre properties.

2. The Bycuras' Objection to Founders' Claim is sustained. Founders' proof of claim is allowed in the amount of $268,764.49 (the claim amount less the attorneys' fees and costs), secured by: (1) a mortgage lien on the 13 acres; and (2) a judgment lien that attaches to the Bycuras' real property, including the 1 acre. The mortgage arrearage claim is limited to $44,193.44, removing the attorneys' fees and costs.

3. Confirmation of the proposed plan is denied. If the Bycuras are to maintain a Chapter 13 case, they must file a revised plan within **seven (7) days** from entry of this Order.

4. Founders' Motion for Relief from Stay is granted in part and denied in part. Founders is granted relief from stay to proceed with its state law collection rights regarding the 13 acres. Any further relief requested in Founders' motion is denied.

**IT IS SO ORDERED.**

**FILED BY THE COURT**
**11/02/2015**



US Bankruptcy Judge
District of South Carolina

Entered: 11/02/2015

15